**United States Court of Appeals**
***For The Eighth Circuit***
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Susan E. Bindler**
***Clerk of Court***

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

September 04, 2026

Andrew D. Wheaton
CITY COUNSELOR'S OFFICE
MO
314 City Hall
1200 Market Street
Saint Louis, MO 63103-0000

RE: 25-3044 Michael Sack v. City of St. Louis, et al

Dear Counsel:

The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion.

Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc must be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. Except as provided by Rule 25(a)(2)(iii) of the Federal Rules of Appellate Procedure, no grace period for mailing is allowed. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

Susan E. Bindler
Clerk of Court

NDG

Enclosure(s)

cc: Clerk, U.S. District Court, Eastern District of Missouri
Lynette Marie Petruska

District Court/Agency Case Number(s): 4:23-cv-00952-SEP

**United States Court of Appeals**
***For The Eighth Circuit***
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Susan E. Bindler**
***Clerk of Court***

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

September 04, 2026

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

RE: 25-3044 Michael Sack v. City of St. Louis, et al

Dear Sir or Madam:

A published opinion was filed today in the above case.

Counsel who presented argument on behalf of the appellant and appeared on the brief was Andrew D. Wheaton, of Saint Louis, MO.

Counsel who presented argument on behalf of the appellee and appeared on the brief was Lynette Marie Petruska, of Saint Louis, MO.

The judge who heard the case in the district court was Honorable Sarah E. Pitlyk.

If you have any questions concerning this case, please call this office.

Susan E. Bindler
Clerk of Court

NDG

Enclosure(s)

cc: MO Lawyers Weekly

District Court/Agency Case Number(s): 4:23-cv-00952-SEP

# United States Court of Appeals
## For the Eighth Circuit

---

No. 25-3044

---

Michael Sack,

*Plaintiff - Appellee,*

v.

City of St. Louis; Mayor Tishaura O. Jones, in her individual capacity; Daniel Isom, in his individual capacity,

*Defendants - Appellants*.

---

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

---

Submitted: June 10, 2026
Filed: September 4, 2026

---

Before COLLOTON, Chief Judge, ERICKSON and GRASZ, Circuit Judges.

---

COLLOTON, Chief Judge.

Michael Sack, a former applicant for the position of police commissioner, sued the former mayor of St. Louis and the former interim director of public safety, alleging discrimination on the basis of race. The defendants moved to dismiss the complaint for failure to state a claim and based on qualified immunity. The district

court[*] denied the motion. The former officials appeal the denial of qualified immunity, and we affirm.

I.

In this procedural posture, we take the facts as alleged in Sack's complaint as true and apply all reasonable inferences in his favor. *Faulk v. City of St. Louis*, 30 F.4th 739, 744 (8th Cir. 2022). In September 2021, the City of St. Louis began a nationwide search for a new police commissioner. The city charter authorized an interim director of public safety, Daniel Isom, to select the new commissioner from candidates who were certified by the personnel department.

The City's job posting advised that "applications were to be accepted until a sufficient number were received to fill the anticipated vacancy." Sack and Lawrence O'Toole, both lieutenant colonels with the police department, were among twenty-nine who applied.

The City invited six candidates to take an in-person exam, but four did not appear. Only Sack and O'Toole received test scores, and the two thereby "completed the process to be considered for Commissioner." The personnel department certified both candidates. Sack was informed that he scored 100 on the promotion test, and that he was ranked first on the list of eligible candidates. Sack was directed to contact Isom to arrange an interview, and he did so, but Isom did not schedule the interview.

In January 2022, Mayor Tishaura Jones stated that "she was not going to pick" either certified candidate. Jones said that she "only had two white male candidates to choose from and St. Louis is more diverse than white males, our police department

---

[*]The Honorable Sarah E. Pitlyk, United States District Judge for the Eastern District of Missouri.

is more diverse." In May, Jones "informed Sack and the public that she was starting a new search" for a police commissioner.

The reopened search for commissioner established lower minimum qualifications. The City then selected four finalists: Sack, two black candidates, and Robert Tracy, who is white. After both black finalists withdrew, the City selected Tracy as police commissioner.

Sack sued Jones and Isom under 42 U.S.C. § 1983, alleging that they violated his rights under the Equal Protection Clause by declining to promote him based on race and by reopening the search based on the race of the final candidates.

Jones and Isom moved to dismiss the complaint. *See* Fed. R. Civ. P. 12(b)(6). They argued that Sack suffered no adverse employment action and that he failed plausibly to allege a failure to promote, in part because the City ultimately appointed a white male as commissioner. Jones and Isom also raised a defense of qualified immunity. The district court denied the motion. Jones and Isom appeal.

II.

In an interlocutory appeal from the denial of qualified immunity, we have jurisdiction to decide "the purely legal issue of whether the facts alleged by the plaintiff are a violation of clearly established law." *Franklin ex rel. Franklin v. Peterson*, 878 F.3d 631, 635 (8th Cir. 2017). Qualified immunity shields officials from suit under § 1983 if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation omitted). At this stage of a proceeding, dismissal is proper only where qualified immunity is established on the face of the complaint. *Weaver v. Clarke*, 45 F.3d 1253, 1255 (8th Cir.1995). We thus consider whether, taking Sack's allegations as true, reasonable officials would have

been on clear notice that the alleged conduct violated the Equal Protection Clause. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Jones and Isom argue that Sack does not allege a violation of a clearly established right because he has not pleaded an adverse employment action. This court applies a framework for employment discrimination claims under the Fourteenth Amendment that is parallel to the analysis of claims under Title VII of the Civil Rights Act. *Humphries v. Pulaski Cnty. Special Sch. Dist.*, 580 F.3d 688, 692 n.3 (8th Cir. 2009). At the time of this episode, a public employee could prove an equal protection violation by showing an adverse employment action based on race. *Id.* at 692.

The district court concluded that Sack alleged an adverse employment action in two respects. First, like the firefighters in *Ricci v. DeStefano*, 557 U.S. 557 (2009), Sack alleged that he was "denied an established route to promotion because of his race." That is, the court concluded, the defendant officials "reopened an application process and changed its requirements because the two resulting candidates were white."

Second, Sack alleged that the defendants failed to promote him because of his race. Sack alleged that the only two candidates certified after testing as eligible for promotion were white males. The mayor stated publicly that she was not going to select one of them, because she "only had two white male candidates to choose from and St. Louis is more diverse than white males." The second candidate then retired, but instead of selecting Sack—who was "more than qualified" and ranked first on the eligibility list—the officials reopened the search and lowered the minimum qualifications for the position. The court thus concluded that the complaint supported an inference that the officials elected not to promote Sack because of his race.

In *Ricci*, a civil service board rejected test results from a promotional exam for firefighters, because "too many whites and not enough minorities would be promoted were the lists to be certified." *Id.* at 579 (quoting *Ricci v. DeStefano*, 554 F. Supp. 2d 142, 152 (D. Conn. 2006)). The Supreme Court held that "[w]ithout some other justification, this express, race-based decisionmaking violates Title VII's command that employers cannot take adverse employment actions because of an individual's race." *Id.* We apply the same framework for employment discrimination claims under Title VII and the Fourteenth Amendment, so *Ricci* clearly establishes that invalidating the results of an established hiring process based on race is unlawful.

Jones and Isom argue that Sack has not alleged an adverse employment action because he was not *entitled* to a promotion under the City's process. We think this argument misunderstands *Ricci*. The eighteen firefighter plaintiffs in *Ricci* were not entitled to a promotion before the city invalidated the test results there. In that case, the city was governed by a "rule of three" under which the hiring authority was required to fill each vacancy by choosing one candidate from the top three scorers on the list. *Id.* at 564. The firefighters were "*denied a chance* at promotions when the [Board] refused to certify the test results." *Id*. at 574 (emphasis added). The Court's strongest statement about their prospects was that the firefighters "*likely* would have been promoted based on their good test performance." *Id*. at 562 (emphasis added). But there were eighteen plaintiffs, and the opinion says that "[u]nder the rule of three, 9 candidates were eligible for an immediate promotion to captain." *Id*. at 566. Without asserting that all eighteen plaintiffs were entitled to a promotion, the Court recognized the presence of "adverse employment actions." *Id.* at 579.

Beyond that, Sack does allege in this case that he was entitled to a promotion under the City's established hiring process. His complaint alleges that under Civil Service Rule VII, § 3(c), the appointing authority may request additional eligible candidates from the Department of Personnel only "[i]f the appointing authority is unable to fill the vacancy from the list provided." According to the complaint, four

of six candidates withdrew by declining to take the relevant test, one candidate retired, and Sack was the highest-ranked candidate and the only eligible applicant remaining. The only reason that the appointing authority was "unable to fill the vacancy from the list provided," he alleges, was the appointing authority's decision to discriminate on the basis of race. According to the complaint, it follows that if the City had not discriminated, then Sack was entitled to the promotion. In *Eveland v. City of St. Louis*, 142 F.4th 1053 (8th Cir. 2025), there was no "evidence that the city bound itself in some fashion" to promote high-scoring firefighters, *id*. at 1055, so a due process claim failed. But Sack alleges that the City bound itself through its Civil Service Rule unless it was "unable to fill" the position for a legitimate reason, and that allegation cannot be rejected at the pleading stage of the case.

Jones and Isom maintain that Sack suffered no adverse employment action because he remained under consideration in the City's reopened search after the mayor refused to allow the hiring of a white male finalist. Again, we believe the argument misunderstands *Ricci*. The firefighter positions in that case remained unfilled after the test scores were discarded, and the Court did not rest its decision on a conclusion that the eighteen plaintiff firefighters were ineligible for future consideration. The adverse action was the race-based refusal to certify test results under the established hiring process.

The officials also contend that there was no violation of a clearly established constitutional right because Sack was not denied the opportunity to compete for the position of commissioner in a reopened search. Sack was adversely affected, however, when the officials forced him to compete against a new applicant pool in a new process with new selection criteria. The ability to compete in a new search process, engineered for reasons of race, does not avoid a violation of equal protection in the first hiring process.

At the time the defendant officials declined to promote from the original candidate list and reopened the search allegedly based on race, any reasonable official was on notice that an adverse employment action motivated by race was unlawful. It was clearly established in light of *Ricci* that once an employer has established a "process by which promotions will be made," and "made clear [its] selection criteria," it may not invalidate the results of that process for racial reasons, "thus upsetting an employee's legitimate expectation not to be judged on the basis of race." 557 U.S. at 585. Sack has therefore plausibly alleged that Jones and Isom violated his clearly established right to equal protection of the law.

The officials argue alternatively that the district court did not "conduct the requisite individualized analysis of the individual defendants' respective conduct." Liability under § 1983 is personal, and the doctrine of qualified immunity requires "an individualized analysis of each officer's alleged conduct." *Walton v. Dawson*, 752 F.3d 1109, 1125 (8th Cir. 2014) (internal quotation omitted). Sack therefore must plead that each official, through his or her own actions, has violated the Constitution. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Sack adequately alleged that Jones violated his rights. The complaint asserts that "Jones stated that she was not going to pick either of the candidates certified" because both candidates were white males. Jones then "informed Sack and the public that she was starting a new search for Commissioner." Sack thus alleges that Jones herself claimed authority to reopen the search process and expressed a discriminatory motive for the action.

Sack also sufficiently alleged that Isom was personally involved in an equal protection violation. He alleges that the personnel department certified Sack and O'Toole as "the two eligible and qualified candidates for the Public Safety Director to choose from," and that additional eligibles could be requested if "the appointing authority is unable to fill the vacancy from the list provided." Isom was the interim

director of public safety and the appointing authority for the position of commissioner. Sack alleges that Isom was personally involved in the hiring process because Sack was instructed to contact Isom to arrange an interview for the position. When the search was reopened without an offer to interview to Sack, it is reasonable to infer, drawing on experience and common sense, that the official who served as the appointing authority participated in the decision. At the pleading stage, we see no error in denying Isom's motion to dismiss.

The order of the district court denying the motion to dismiss based on qualified immunity is affirmed. Sack's motion for damages and costs is denied.

______________________________